Total pages: 9
JAMES E. SALVEN
Chapter 7 Trustee
8427 N. Millbrook Ave., Ste. 101
Fresno, California 93720
(559) 230-1095

# IN THE UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF CALIFORNIA

In the Matter of

**Kevin Christiansen,**

Debtor(s).

Case No. 09-18598-B-7

DC No. JES-1

MOTION FOR AUTHORIZATION TO SELL PERSONAL PROPERTY

Date: May 12, 2010
Time: 10:00 a.m.
Dept: B

TO THE HONORABLE W. RICHARD LEE, UNITED STATES BANKRUPTCY JUDGE:

James Salven respectfully represents:

1. He is the duly appointed, qualified and acting trustee of the above-entitled estate.

2. The above-captioned case was filed under Chapter 7 on 9/4/2009.

3. This Court has jurisdiction over this proceeding by virtue of 28 U.S.C. §1334(a). This is a "core" proceeding pursuant to 28 U.S.C. §157(b)(2)(A). This motion is brought pursuant to 11 U.S.C. §363.

4. Among the assets of this estate is an option to acquire the property management business, with whom the debtor is presently employed. The employment agreement, see attached Exhibit "A" provides the debtor(in ¶ 8)with the option to acquire the business

FILED
April 12, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0002551340

for the sum of $26,000 during the period 05/02/09 to 05/01/11. After that date, and through 05/01/14 when the option expires, the purchase price is subject to contractual adjustment.

5. The trustee has obtained an offer from the debtor to purchase the option for the sum ob $10,000. Funds have been received by the estate.

6. The trustee has not agreed to pay commissions to any party in connection with the proposed sale.

7. The property is to be sold subject to liens and encumbrances of record, of which there are none known. Sale is also subject to higher and better bid.

8. Said offer is the best and highest offer received for said property and, in the opinion of the trustee, said offer is for the full and fair market value of said property.

9. The trustee believes that confirmation of said sale on the terms set forth above is in the best interest of the creditors of this estate and all parties in interest.

**WHEREFORE**, the trustee prays that after appropriate notice and opportunity to be heard, he be authorized to sell the above-described asset to , or nominee.

DATED: 4/11/10

JAMES E. SALVEN,
Movant

# K & K PROPERTY MANAGEMENT
## EMPLOYMENT AGREEMENT
## WITH
## KEVIN CHRISTIANSEN

DATED: 5/2/ ,2009

PARTIES: Leland Larsen and Jean Larsen, husband and wife doing business as "K & K Property Management" (hereinafter referred to as the "Company"); and

Kevin Christiansen, an individual (hereinafter referred to as "Employee").

AGREEMENT:

In consideration of the mutual promises and conditions in this agreement, it is agreed as follows:

1. <u>Term</u>. Subject to earlier termination as provided in this Agreement, Employee shall be employed for two (2) years (the "Initial Term"), commencing on the date hereof. Thereafter, this Agreement shall become an "At Will" employment agreement which may be terminated by either party, with or without cause, upon notice to the other party.

2. <u>Place of Employment</u>. Unless the parties otherwise agree in writing, and except that Company may from time to time require Employee to travel temporarily to other locations on Company's business, Employee shall perform the services required under this agreement at Company's offices which are and shall remain located in Fresno County, California.

3. <u>Duties and Authority</u>. Employee shall serve as General Manager of Company's business operations. In such capacity, Employee shall report directly to Company's President and board of directors; and shall perform the duties and have the responsibilities customarily accompanying the position of General Manager, including but not limited to those duties and responsibilities described on Exhibit A attached hereto and made a part hereof. Employee shall perform his duties on a daily basis during normal business hours of operation. Employee shall manage and conduct Company's business, subject to policies adopted by the board of directors.

4. <u>Restrictions on Outside Business Activities</u>. During the term of this Agreement, Employee's full productive time, energies, interest, and abilities shall be devoted to the performance of his duties and obligations under this Agreement, and Employee shall not, without Company's prior written consent, render to others property management service of any kind for compensation, or engage in any other business activity that would materially interfere with the performance of Employee's duties under this Agreement other than real estate sales and the management of the real estate office in Mariposa..

Exhibit "A"

1 of 7

5. _Salary_. As compensation for services rendered under this Agreement, Company shall pay Employee on a monthly basis an amount equal to five percent (95%) of the Company's net profits.

6. _Termination_.

   a. _Termination by Company_. Notwithstanding any provision of this Agreement to the contrary, the Company shall have the right to terminate Employee's employment hereunder at any time for cause upon written notice to Employee. The term "cause" as used above shall mean Employee's (i) willful and persistent refusal to perform Employee's reasonable duties set forth herein, which is not cured within fifteen (15) calendar days following written notice from the Company through the Board of Directors; (ii) failure to adequately perform Employee's reasonable duties set forth herein, which is not cured within fifteen (15) calendar days following written notice from the Company through the Board of Directors; (iii) unless otherwise excused in advance by the Company, failure to devote time to the Company's business; (iv) deliberate injury or attempted injury to the Company, its business, or its property or reputation caused by or resulting from the wrongful intentional act or omission by Employee; (v) misappropriation for his personal benefit of any business opportunity of the Company or thing of material value to the Company; (vi) engagement in any act of dishonesty or fraud; (vii) engagement in any unlawful, immoral, or criminal act of a serious nature (whether or not such act constitutes a felony) which occurs during and within the scope of Employee's employment or otherwise impairs Employee's ability to perform the services required under this Agreement or adversely affects Company's operations, business, client prospects, or reputation, or (viii) breach of any material provision of this Agreement, which is not cured within fifteen (15) days following written notice from the Company through the Board of Directors. The right of termination set forth in this section shall be in addition to, and not in lieu of, any other rights of the Company at law or in equity.

   b. _Death of Employee_. The death of Employee shall be treated as a termination of Employee's employment under this Agreement.

   c. _Disability of Employee_. Notwithstanding any provision of this Agreement to the contrary, the Company and/or the Board of Directors shall have the right to terminate Employee's employment hereunder upon written notice to Employee if Employee, by reason of physical or mental disability, has been unable to perform the services contemplated herein in his normal and regular manner for ninety (90) consecutive calendar days.

   d. _Company's Obligation to Pay Salary Upon Termination_. In the event that Employee's employment is terminated pursuant to Subsections 11(a), 11(b), or 11(c) or on account of Employee's own voluntary termination of employment from Company, Company's obligation to pay Employee's salary shall terminate on the date of termination.

7. _Other Termination_. Notwithstanding any provision of this Agreement to the contrary, Company shall have the right to terminate Employee's employment under this Agreement at any time upon ninty (90) days notice to Employee. In the event that Employee's employment with Company is terminated by Company pursuant to this subsection before the expiration of the Initial Term, Employee shall be entitled to receive severance pay equal to the remaining salary that would have been payable by Company to Employee under Section 5 above

for the remaining months of the Initial Term. Thereafter, Company shall have no further payment obligations to Employee hereunder. Employee shall not be entitled to severance pay following the end of the Initial Term.

8. <u>Option</u>. Company hereby grants to Employee an option to purchase K & K Property Management (the "Option"). The Option shall become exercisable upon the date of this Agreement and shall terminate effective five (5) years following the date of this Agreement. The Option granted under this Section 8 shall be subject to the following terms and conditions:

   a. <u>Vesting of Shareholder Rights</u>. Neither Employee nor his successor shall have any of the rights as an owner of the Company until the Option has been exercised.

   b. <u>Nontransferability of Option</u>. The Option shall be transferable or assignable by Employee upon the written permission of Buyer. The Option shall not be pledged or hypothecated in any way and shall not be subject to execution, attachment, or similar process except with the express consent of Company.

   c. <u>Purchase Price</u>. The purchase price for K & K Property Management under the Option shall be Twenty Six Thousand Dollars ($26,000.00) if exercised within the first 2 years from close of transaction. Should Seller choose to exercise the option after the two year period Seller will pay an additional 5% per year up thru the end of the 5th year.

   d. <u>Notice, Time, and Place of Exercise</u>. Employee shall exercise the Option by giving written notice to Company of his intention to exercise the Option specifying the place and date for the closing (which date shall be not later than thirty (30) business days from the date such notice is mailed). If any law, regulation, or other restriction will not permit such exercise of the Option to be consummated during such thirty (30) day period, the date for the closing shall be within five (5) days following the cessation of such restriction on consummation.

   e. <u>Payment of Purchase Price</u>. Employee shall pay for the option shares by delivery of a certified or bank cashier's check in immediately available funds payable to the order of the Company.

   f. <u>Tax Ramifications</u>. Employee acknowledge and understands that Company has made no representation of any kind concerning the tax consequences to Employee that would result from the grant or exercise of the option or from the subsequent sale of option shares acquired pursuant to the exercise of the option, and that Employee has relied on consultation with his own tax advisors concerning such matters.

9. <u>Trade Secrets and Confidential Information</u>. Employee acknowledges and agrees that the sale or unauthorized use or disclosure of any of Company's trade secrets obtained by Employee during his employment by Company prior to or pursuant to this Agreement constitutes unfair competition. The term "trade secrets" is to be broadly defined. Trade secrets shall include all information that has or could have commercial value or other utility to Company. Trade secrets also includes all information of which the unauthorized disclosure could be detrimental to the interests of Company whether or not such information is identified as

3  "A"  /347

a trade secret by Company. By example and without limitation, trade secrets include any and all of the following: processes, or sources, sales, or other managerial or operation matters, proposed products or services or those of any of its associates, the facts of any particular product or service planned, under consideration, or in production, as well as any description of the features thereof, marketing plans, business plans, strategies, forecasts, unpublished financial information, budgets, projections, and client and supplier identities, characteristics, and agreements. Employee further acknowledges and agrees that the names and addresses of Company's clients constitute trade secrets of Company. Employee agrees not to engage in any unfair competition against Company. Except with the express prior written consent of Company, Employee agrees that he will not, during the period of his employment (1) engage in any employment or activity other than for Company in any business in which Company is engaged or contemplates engaging; (2) induce any other consultant or any Employee of Company to engage in any such employment or activity; or (3) solicit any clients or potential clients of Company for services similar to those performed by Employee even though not competitive therewith.

10. <u>Client Information; Solicitation of other Employees</u>. In the course of employment, Employee will have access to confidential records and data pertaining to Company's clients and client relations. Such information is considered secret and is disclosed to Employee in confidence. Except in the course of Employee's employment by Company or with Company's prior consent, Employee will not directly or indirectly disclose or use any such information during the employment term and during a period of two years following termination of employment. In addition, during the specified period, Employee will not induce or attempt to induce any of Company's other employees or representatives to discontinue working for or representing Company in order to work for or represent any of Company's competitors.

11. <u>Notices</u>. All notices, requests, demands, and other communications required to or permitted to be given under this Agreement shall be in writing and shall be given to each party to this Agreement. All notices, requests, demands, and other communications required to or permitted to be given under this Agreement shall be conclusively deemed to have been duly given (1) when hand delivered to the other party; or (2) when received when sent by telex or facsimile at the address and number set forth in the records of the Company (provided, however, that notices given by facsimile shall not be effective unless either (a) a duplicate copy of such facsimile notice is promptly given by depositing same in a United States post office with first-class postage prepaid and addressed to the party at the party's address as set forth in the records of the Company, or (b) the receiving party delivers a written confirmation of receipt for such notice either by facsimile or any other method permitted under this Section; additionally, any notice given by telex or facsimile shall be deemed received on the next business day if such notice is received after 5:00 p.m. (recipient's time) or on a non-business day; or (3) three business days after the same have been deposited in a United States post office with first class, or certified mail return receipt requested postage prepaid and addressed to the party at the party's address as set in the records of the Company; or (4) the next business day after same have been deposited with a national overnight delivery service reasonably approved by the parties (Federal Express and DHL WorldWide Express being deemed approved by the parties), postage prepaid, addressed to the party at the party's address as set forth in the records of Company with next-business-day delivery guaranteed, provided that the sending party receives a confirmation of delivery from the delivery service provider. Each party shall make an ordinary, good faith effort to ensure that it will accept or receive notices that are given in accordance with this Section, and that any person to be given notice actually receives such notice. A party may change or

4

supplement the party's address or designate additional addresses, for purposes of this Section by giving the other party written notice of the new address in the manner set forth above.

12. <u>Amendments and Modifications</u>. No amendment, modification, or supplement to this Agreement shall be binding on any of the parties unless it is in writing and signed by the parties in interest at the time of the modification.

13. <u>Severability</u>. If any term or provision of this Agreement is determined to be illegal, unenforceable, or invalid in whole or in part for any reason, such illegal, unenforceable, or invalid provisions or part thereof shall be stricken from this Agreement, and such provision shall not affect the legality, enforce ability, or validity of the remainder of this Agreement. If any provision or part thereof of this Agreement is stricken in accordance with the provisions of this section, then this stricken provision shall be replaced, to the extent possible, with a legal, enforceable, and valid provision that is as similar in tenor to the stricken provision as is legally possible. However, if either party in good faith determines that the finding of illegality or unenforceability adversely affects the material consideration for its performance under this Agreement, then such party may, at its option, by giving written notice to the other, terminate the Agreement. In such event the parties shall take such reasonable action to restore each party to the position it was in prior to the making of this Agreement.

14. <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of California without regard to any requirements as to conflicts of laws.

15. <u>Binding Nature of Agreement</u>. The provisions of this Agreement shall apply to and bind the successors, administrators, and assigns, of the parties to this Agreement.

16. <u>Warranty of Authority to Execute Agreement</u>. The individuals executing this Agreement on behalf of the parties hereto warrant and represent that they have the authority to execute and deliver this Agreement on behalf of such party, and to bind such party to the timely performance of each and every term and provision of this Agreement.

17. <u>Legal Costs and Attorneys' Fees</u>. If either party to this Agreement shall bring any action, suit, counterclaim, appeal, arbitration, or mediation for any relief against the other, declaratory or otherwise, to enforce the terms hereof or to declare rights hereunder (collectively, an Action), the losing party shall pay to the prevailing party a reasonable sum for attorneys' fees and costs (at the prevailing party's attorneys' then-prevailing rates as increased from time to time by the giving of advance written notice by such counsel to such party) incurred in bringing and prosecuting such Action and/or enforcing any judgment, order, ruling, or award (collectively, a Decision) granted therein, all of which shall be deemed to have accrued on the commencement of such Action and shall be paid whether or not such Action is prosecuted to a Decision. Any decision entered in such Action shall contain a specific provision providing for the recovery of attorneys' fees and costs incurred in enforcing such Decision. The court or arbitrator may fix the amount of reasonable attorneys' fees and costs on the request of either party. For the purposes of this paragraph, attorneys' fees shall include, without limitation, fees incurred in the following: (1) post-judgment motions and collection actions; (2) contempt proceedings; (3) garnishment, levy, and debtor and third party examinations; (4) discovery; and (5) bankruptcy litigation. "Prevailing party" within the meaning of this paragraph includes,

without limitation, a party who agrees to dismiss an Action on the other party's payment of the sums allegedly due or performance of the covenants allegedly breached, or who obtains substantially the relief sought by it.

      18.    <u>Arbitration</u>.

          a.    IF A DISPUTE OR CLAIM ARISES ALLEGING A VIOLATION OF LAW BY EITHER PARTY HERETO, THE PARTIES AGREE TO WAIVE ANY RIGHTS EACH MAY HAVE TO A JURY OR COURT TRIAL AND TO USE BINDING ARBITRATION TO RESOLVE ALL SUCH DISPUTES BETWEEN THEM.

          b.    With the exception of claims for workers' compensation or unemployment insurance compensation, any claim of any nature alleging a violation of law by the Company or Employee and arising during or after, and either out of or connected with Employee's employment by Company or the termination thereof, that might otherwise be subject to litigation, including but not limited to any claim for unlawful retaliation or civil rights violations, wrongful termination of employment, violation of public policy, or unlawful discrimination or harassment because of race, color, sex, national origin, religion, age, physical or mental disability or condition, marital status, sexual orientation, or other legally protected characteristic, shall be resolved by final and binding arbitration whenever such claim cannot be resolved by other means.

          c.    To initiate this arbitration remedy, the party raising the dispute must make a written demand for arbitration before the expiration of the federal or state statute of limitation applicable tot he facts and circumstances giving rise to the claim. Absent such timely written demand, the party raising the dispute waives any entitlement or right to arbitration and any other legal or equitable remedy.

          d.    The arbitration shall be conducted in the state and county of your primary place of employment by the Company at the time of the act(s) giving rise to the claim and shall be conducted by a neutral arbitrator selected in accordance with the then-existing rules of practice and procedure concerning non-union employment arbitration of the American Arbitration Association (AAA) or its successor. The parties to the arbitration shall be entitled to conduct discovery sufficient to adequately arbitrate their claims, including access to essential documents and witnesses as determined by the arbitrator and subject to limited judicial review pursuant to California Code of Civil Procedure Section 1286. In a dispute involving statutorily guaranteed rights the arbitrator must issue a written arbitration decision that will describe the essential findings and conclusions on which the decision is based.

          e.    Each party will pay its own costs in connection with the arbitration, unless otherwise ordered by the arbitrator or provided in this Agreement. However, Employee shall not be obliged to pay the arbitrator's fee or any other expense that Employee would not be required to bear if the dispute had been resolved in court.

          f.    The arbitrator shall not have the right to add to, subtract from, or modify any of the terms of this Agreement, nor shall (s)he have the power to decide the justice or propriety of any specific provisions of this Agreement or any matter reserved solely to the Company's discretion. However, no provisions of this Agreement may be interpreted as

"A"

6 of 7

expressing Employee's intent to waive any statutory right that protects Employee from discrimination and/or harassment. Nothing in this Agreement should be interpreted as being inconsistent with statutory remedies and all such statutory rights and remedies will be available to Employee under this Agreement.

    g. THE PARTIES AGREE TO RESOLVE BY NEUTRAL ARBITRATION ANY CLAIMS OR DISPUTES ALLEGING A VIOLATION OF LAW BY EITHER PARTY, AND ARISING OUT OF THE EMPLOYMENT RELATIONSHIP, AND THEY HEREBY WAIVE ANY STATUTORY OR CONSTITUTIONAL RIGHTS EITHER MAY HAVE TO A JURY OR COURT TRIAL, OR RESOLUTION BY ANY ADMINISTRATIVE AGENCY OR TRIBUNAL.

    Executed by the parties at Fresno, California, as of the day and year first above written.

Company:             Employee:

 K & K Property Management

By: _____   _____
  Leland M. Larsen, Owner     Kevin Christiansen

By: _____
  Jean P. Larsen, Owner